22792

W. R. LIVINGSTON, Appellant-Respondent v. NOLAND CORPORATION and Copeland Corporation, Respondents, of whom Copeland Corporation is Respondent-Appellant. Appeal of Copeland Corporation.

(362 S. E. (2d) 16)

Supreme Court

*Robert H. Hood* and *John F. Martin*, of *Robert H. Hood & Associates*, Charleston, *for appellant/respondent.*

*Thomas J. Wills, IV*, of *Barnwell, Whaley, Patterson & Helms*, Charleston, *for respondent.*

*Richard A. Steadman, Jr.*, North Charleston, and *Douglas N. Truslow*, Columbia, *for respondent/appellant.*

Heard April 20, 1987.

Decided Nov. 9, 1987.

NESS, Chief Justice:

W. R. Livingston (Livingston) brought this products liability action to recover damages incurred when his catfish and eel farming operation was partially destroyed by fire. Livingston alleged the fire was caused by a defective refrigerator compressor, originally manufactured by Copeland Corporation (Copeland) and remanufactured, prior to installation, by Our Way, Inc. A total of six (6) remanufactured compressors were sold by Noland Corporation (Noland) to Livingston's refrigeration repairman and were in-

stalled at Livingston's business betwen October, 1978 and the fire in August, 1979.

At the conclusion of Livingston's case, the trial judge granted Noland an involuntary nonsuit on all causes of action except implied warranty. Livingston was granted a voluntary nonsuit with prejudice as to Noland on the cause of action for breach of implied warranty. Copeland was granted an involuntary nonsuit on all causes of action except negligent manufacture and breach of express and implied warranties.

At the conclusion of the evidence, Livingston withdrew his cause of action for express warranty as to all defendants. A verdict of $922.00 actual damages was returned against Copeland for breach of implied warranty.

Copeland appeals the denial of its motions for involuntary nonsuit and for judgment n.o.v. on the implied warranty cause of action. Livingston appeals various rulings, including the involuntary nonsuits on the causes of action for strict liability and negligent failure to warn.

In reviewing the rulings of a trial judge on motions for involuntary nonsuit and judgment n.o.v., this Court must review the evidence and all inferences in the light most favorable to the nonmoving party. *Rewis v. Grand Strand General Hospital*, 290 S. C. 40, 348 S. E. (2d) 173 (1986). If more than one reasonable inference can be drawn from the evidence, the issues of negligence and proximate cause must be submitted to the jury. *Id.*

For the reasons set forth below, we reverse the denial of Copeland's motion for judgment n.o.v. on the implied warranty cause of action and affirm the remainder of the trial judge's rulings.

### Strict Liability and Breach of Implied Warranty

Livingston argued two theories to support his causes of action for strict liability and breach of warranty. First, he asserted the first replacement compressor, installed in October 1978, failed because of a manufacturing defect. This failure allegedly contaminated the entire refrigeration system, causing the failure of the last compressor, which led to the fire. Alternatively, he theorized the final replacement compressor was independently defective and caused the fire. Livingston failed to introduce sufficient evidence to sustain either of these theories.

■ A common element of actions for strict liability and breach of implied warranty is proof the product was not reasonably fit or safe for its intended use. *Claytor v. General Motors Corp.*, 277 S. C. 259, 286 S. E. (2d) 129 (1982). The proof must be sufficient to show not only that the product was defective but that the defect was the direct and efficient cause of plaintiff's injury. *Benford v. Berkeley Heating Co.*, 258 S. C. 357, 188 S. E. (2d) 841 (1972); *Madden v. Cox*, 284 S. C. 574, 328 S. E. (2d) 108 (Ct. App. 1985).

■ As to the first theory, Livingston's experts testified that if the mechanical and electrical systems had been properly flushed and checked at the time of installation, any subsequent problems resulting from the failure of the first compressor would have been eliminated. Additionally, both experts testified that approximately 40,000 compressors fail every year, resulting in no further harm.

The only reasonable inference from the evidence is that the refrigeration system failed because of improper servicing of the system at the time of installation, not because of any defect in the compressor. In addition, the fact that 40,000 compressors fail each year and replacements are properly installed forecloses any argument that negligent installation is reasonably foreseeable. *Benford v. Berkeley Heating Co., supra.*

As to Livingston's second theory, the only reasonable inference from the evidence is that the last compressor was not defective. One expert testified there was no manufacturing defect in the last compressor. The other expert said the compressor differed from the manufacturer's specifications in two minor respects, but the operation of the compressor was still adequate. Additionally, this witness testified that if the system had been adequately maintained prior to the installation of the last compressor, there would have been no problem with the system or the compressor.

Livingston failed to offer sufficient evidence that the compressors were not reasonably fit for their intended use, or, even if they were defective, that they were the proximate cause of the fire which damaged his business.

## Negligent Failure to Warn

A supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous. *Gardner v. Q.H.S., Inc.*, 488 F. (2d) 238 (4th Cir. 1971). Livingston failed to produce any evidence from which a jury could conclude that either Copeland or Noland had reason to believe warning was necessary. S. C. Code Ann. Section 15-73-30 (1977); Restatement (Second) of Torts Section 402A comment j.

On each occasion of a failed compressor, Noland obtained the compressor from Livingston's serviceman and returned it to Our Way, Inc., which furnished a replacement. Livingston's own expert testified that because Our Way, Inc., continued to replace the compressors, Noland would have no way of knowing a warning of any kind was necessary. Noland was "at the mercy" of Our Way, Inc.

As to Copeland, Livingston produced no evidence the manufacturer was actually aware of any problems with these particular compressors which would necessitate a warning. Approximately 40,000 compressors fail each year without creating a fire hazard. Copeland had no reason to believe a warning was necessary.

Livingston failed to produce sufficient evidence that either Copeland or Noland had reason to foresee the compressors would be unreasonably dangerous unless a warning was given.

In light of our disposition of these issues, we need not address Livingston's remaining exceptions. The order of the trial judge denying Copeland's motion for judgment n.o.v. is reversed, the remainder of the trial judge's rulings are affirmed.

Affirmed in part; reversed in part.

GREGORY, HARWELL and FINNEY, JJ. and BRUCE LITTLE-JOHN, Acting Associate Justice, concur.